# North Manheim Township, Appt., *v.* Reading & Pottsville Railroad Company.

Where a railroad crossing of a highway is so constructed as not to endanger the reasonable passage of persons and transportation of property, or as not unnecessarily to interfere with the public highway, it is a substantial compliance with § 12 of the act of February 19, 1849, which requires that when such crossing shall be necessary it shall be so constructed "as not to impede the passage or transportation of persons or property" along the highway.

A railroad company which, constructing its line on an embankment obliquely across a county road, fills in the road to make approaches at grades of 5½ and 7 feet to the hundred, and builds, besides, a new road 100 yards longer which passes beneath the track, complies with the requirements of the statute.

As the grade crossing is an appropriation of the public road, the new road must, in accordance with § 13 of the act, be built "in as perfect a manner as the original road," and this includes the erection of fences.

Although deep cuts near the grade crossing render it dangerous unless protected by a flagman, the court will not enjoin the building of the crossing at grade on the presumption that no flagman will be employed, or that if employed he will be negligent.

NOTE.—By the act of June 7, 1901 (P. L. 531), grade crossings of highways by railroads were forbidden, except in cities of the first and second classes, or unless permitted by the court after proceedings as provided in § 4 of the act. By § 10 of this act, additional tracks at grade, and switches, sidings, and branch lines to manufacturing establishments are exempted from its provisions. *Re* Road, 21 Pa. Super. Ct. 418.

It seems that the institution of legal proceedings in the name of a township requires the concurrence of all the supervisors, or a majority of them.

(Argued February 16, 1888. Decided April 30, 1888.)

January Term, 1887, No. 269, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas of Schuylkill County refusing an injunction and dismissing, conditionally, a bill in equity, July Term, 1885, No. 3. Affirmed.

Upon entering the decree BECHTEL, J., delivered the following opinion, in which the facts are stated:

The defendant denies the right of the plaintiff to maintain this action, and alleges that the commonwealth, at the instance of the attorney-general, is the proper party. The master has considered this subject at considerable length, and cited numerous authorities to sustain the conclusion at which he arrived. He resolved the question in favor of the plaintiff, and determined that the township may sustain a proceeding in equity against the defendant to prevent, by injunction, the erection and maintaining of a public nuisance in its highway, without the intervention of the attorney general.

We will not stop to review these authorities, but for the purposes of this case accept his conclusion upon this subject as correct. We may, however, direct attention to the fact that this proceeding seems to have been instituted by David Shappell, who is but one of the supervisors. North Manheim township has two supervisors, who, for the purpose of repairing the roads, bridges, etc., have divided the township into two districts. While the township may sustain this action, it may be questioned whether one supervisor can, without the consent of the other, institute and conduct legal proceedings in the name of the township. The defendant, at the time of the argument, contended he cannot. The ordinary repair of roads and bridges, and opening roads, authorized by the court of quarter sessions, are ministerial duties, and may be performed by one supervisor. Hence it was ruled in Hopewell Twp. v. Putt, 2 W. N. C. 46, that where one supervisor awarded a contract for building a new road, a person who paid money on the contract at the request of the supervisor could recover the same from the township.

One supervisor cannot, however, levy a tax to pay the debts contracted and expenses incurred in the township. The consent

of both is required, because it is a deliberative and not a ministerial duty.   Cooper v. Lampeter Twp. 8 Watts, 125.

In Union Twp. v. Gibboney, 94 Pa. 537, Justice Trunkey reviews our authorities upon this subject, and discusses the power of supervisors.   From this decision we gather that the general rule is that "one supervisor cannot bind the township for performance of a contract, the propriety of entering into which is the subject of deliberation and the exercise of judgment; but he may in matters purely ministerial.   When the business requires deliberation, consultation, and judgment, all should be convened, because the advice and opinions of all may be useful, and though they do not unite in opinion a majority may act when there are more than two."

In Somerset Twp. v. Parson, 105 Pa. 360, we have an illustration of what is meant by ministerial and deliberative duties. There were four supervisors in the township; they met, laid the road tax and fixed the wages to be allowed for all hands, teams and plow, and agreed to be responsible if the plow was broken. As to the damage to the plow the undertaking of the supervisor was held to be "outside and beyond the ministerial power delegated to him."   As to the hire of the man, team and plow, it was said:   "It is in the line of his ministerial duty to open or repair a road and he can therefore employ laborers for that purpose."

Is the institution of legal proceedings such an act, the propriety of which requires deliberation and the exercise of judgment?   If so, it is beyond the power of one supervisor.   Since, however, this proceeding was instituted to remove an alleged obstruction to one of the roads under the care of Mr. Shappell, we will resolve any doubt upon this subject in favor of the plaintiff.

The defendant is a corporation duly incorporated under the provisions of the act of February 19, 1849.   The 12th section of the act of 1849, P. L. 84, contains this language:   "Whenever in the construction of such road or roads it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of the said company so to construct the said road across such established road or way as not to impede the passage or transportation of persons or property along the same."   There can be no doubt of the right of the defendant to cross or intersect a public highway under the provision of the act, either at grade, above or below grade.

See Struthers v. Dunkirk, W. & P. R. Co. 87 Pa. 282; Com.

v. Erie & N. E. R. Co. 27 Pa. 339, 371, 67 Am. Dec. 471; and Pennsylvania R. Co.'s Appeal, 115 Pa. 514, 5 Atl. 872.

It becomes important to determine how the language "so as not to impede the passage or transportation of person or property along the same" shall be understood. The word "impede" is almost synonymous with the word "obstruct," except that it is seldom, if ever, used to signify an entire blocking up of the way. It is an obstacle, not an impassable barrier. To understand this word in this way, and say that a grade crossing must be of such a character as not to be an obstacle in the way, or an obstruction to the passage or transportation of person or property, is to prohibit grade crossings entirely.

In the railway laws of Massachusetts it is provided that crossings shall be constructed so as not to obstruct a turnpike or road. In Spear v. Cummings, 23 Pick. 226, it was held to mean that they should be built so as to cause the least possible inconvenience or impediment.

By a statute of this commonwealth owners of lands adjoining navigable streams were permitted to build dams, provided they did not obstruct or impede navigation or prevent fish from passing up the stream.

In Bacon v. Arthur, 4 Watts, 440, our supreme court held that if these words were taken literally the owners could not avail themselves of the privilege at all; but as this construction would have been contrary to the grant itself, a more liberal one was adopted, and a dam that did not materially hinder was held to be all that was required.

In Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471, the words "impede," "obstruct," and "hinder" were considered and construed by Ch. J. BLACK and Justice LEWIS to mean, so as not to unnecessarily interfere with the public highway.

Accepting these decisions as authorities upon this subject we conclude that where a crossing is so constructed as not to endanger the reasonable passage of persons and transportation of property, or as not to unnecessarily interfere with the public highway, it is a substantial compliance with the 12th section of the act of 1849. The crossing in question, including the track, is 12 feet and 8 inches high. The northern approach is 200 feet long and of the average rise of $5\frac{1}{2}$ feet to the hundred. The southern approach is 244 feet long and of the average rise of 7 feet to the hundred. The approaches are from 19 to 20

feet wide, and in the narrowest place about 17 feet.   In addition to this the master says that as the railroad enters a cut going west a traveler approaching from the south cannot see the approaching train from the west until he is close to it, and for the same reason cannot so well hear its approach.   He finds that without a flagman this crossing would be dangerous, and that if a flagman were placed there, he might possibly be negligent in the discharge of his duty.   If this crossing requires a flagman, it is the duty of the defendant to put one there; and we cannot presume that this duty will not be performed, or that the flagman when put there will be negligent, and then consider these presumptions in determining this controversy.

There is, however, another matter to be considered in connection with the character of this crossing.   The master finds as a fact, and there is no controversy upon this subject, that the railroad company built a level road from Adams's barn to the Orwigsburg road, a distance of 335 yards.   The Orwigsburg road leads through an archway and passes on to Landingville.   That this new road does not increase the distance to any given point more than 100 yards, and is substantially built on good foundations, with a top dressing of from 6 inches to 2 feet of broken stone and earth.   This road is of the average width of 21 feet, and of the average distance of 75 feet away from the railroad.

The defendant's engineers testified that this road was built in pursuance of an understanding with Mr. Shappell that if the company provided this new road there would be no objection to having the old road filled up and crossed at grade.   Mr. Shappell denied this; but the master assumes the fact to be as represented, and concludes that such an agreement made by one supervisor would be void as against the township, because it is an act requiring deliberation and judgment.   We agree with this conclusion, and think we could safely go farther and say that both the supervisors could not by their agreement vacate or change the location of any of the public roads of the township.   But it is not a question of the power of the supervisors to change this road, but whether the legislature has conferred upon the defendant the power to do so.

The 13th section of the act of 1849 is in this language: "If any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their own

proper expense, on the most favorable location, and in as perfect a manner as the original road." Then follows a provision securing parties any damages they may suffer by the change.

Our present learned Chief Justice, in speaking of this section of the act of 1849, says: "It gives an unconditional power to a railroad company to construct its railroad upon a public road, but commands what the company shall thereupon do. The legislature authorizes the original highway to be changed to another form of highway. The act of February 19, 1849, gives to all railroad corporations, subject to its provisions, the right to take possession of such portions of any public road as come within the line of its tracks."

To the commonwealth belongs the franchise of every highway within its limits, as a trustee of the public. Every public road therein exists by force only of the commonwealth's authority. So, every railroad has its franchise by grant from the state. See Danville, H. & W. R. Co. v. Com. 73 Pa. 37.

In Parke's Appeal, 64 Pa. 137, THOMPSON, Ch. J., says: "Neither the court below nor this court have any right to interfere with the location made by the company on the score of preference, if any be felt. Our only question is whether it has or has not exceeded a discretion on the subject apparent on the face of the act of incorporation."

Now mark the language of the act: "If any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road." There is nothing in this that requires that the company should first longitudinally appropriate the road in order to acquire the right to change its site. Nor is there anything in the section to forbid the company changing the site of the road when the appropriation consists of a grade crossing at an angle of 45 degrees. It is therefore difficult to understand how we could give such construction to this language as would authorize a railway company to exercise the power it confers, only upon condition that its track was placed lengthwise upon some part of the public highway. But should this be regarded as doubtful, still the fact remains that the presence of this new road affords to every traveler, whether on foot or by vehicle, an opportunity to decide for himself whether he will make the ascent and cross the track at grade, or whether he shall journey 100 yards farther, under through the archway, upon a practically level road, and thus avoid entirely both the ascent and grade crossing. Under these circumstances

the master recommends that we shall enjoin the defendant and direct the removal of the embankment which was there when the bill was filed; and second, that we direct the defendant to erect and maintain a proper bridge or archway over said public road.

Without further discussion we may say that every member of the court has examined this subject, and we are unanimous in the conclusion that this decree should not be entered. We are, however, not prepared to dismiss the complainant's bill, at this time. At the time of the hearing before the master the new road was not completed, but the defendant was engaged in putting on the top dressing of stone, etc. The report shows that it was then contemplated that this road should be, in part at least, fenced. The above dressing has been completed, but the fencing has in point of fact been entirely neglected. The channel of the east branch of the Mohannon creek has been changed by the defendant, and the creek now flows along the northern side of the new road for some distance. The embankment of the new road is at some places as much as 3 feet above the level of the adjoining territory. The supervisor testified that this road should be fenced upon both sides, and the master regards proper fencing of portions of it as a necessity. The act commands that in case the site of a road shall be changed, the new road shall be constructed forthwith "on the most favorable location and in as perfect a manner as the original road." It is but proper that the provision of the act should be fully observed in the construction of the new road. These considerations lead us to believe that proper fencing of the substituted road would be but a reasonable precaution, and really necessary to make it, in the language of the act, "in as perfect a manner as the original road."

In view of the facts that more than a year has elapsed since the defendant began the construction of this new road, and its railroad is now being operated by it, and that no attempt has yet been made to fence any part thereof, although fencing, to a certain extent at least, would seem to be necessary according to the testimony of both sides,—it seems but proper that the defendant should pay the costs.

And now January 3, 1887, it is ordered that upon the defendant's properly fencing the substituted road in question, within a reasonable time, and paying the costs, the complainant's bill shall be regarded as dismissed.

The assignments of error specified, substantially, the entry of this decree.

*W. F. Shepherd* and *G. H. Gerber,* for appellant.—A master's finding of the facts will not be disturbed, especially when approved by the court below.   Sproull's Appeal, 71 Pa. 137; Phillips's Appeal, 68 Pa. 130; Kutz's Appeal, 100 Pa. 75.

This railroad company has at this grade crossing constructed its line of railway so as to be a serious inconvenience and dangerous obstruction to travel.   This is in violation of the law. Northern C. R. Co. v. Com. 90 Pa. 300.

A grant under which it is claimed that authority is given to destroy a public right should be strictly construed.   Jersey City v. Central R. Co. 40 N. J. Eq. 417, 2 Atl. 262.

Public highways ought not to be destroyed even in part, under pretense of legislative authority, unless it be conferred either in express terms or by necessary implication.   If the words are ambiguous, the construction ought to be in favor of the common right of highways, not against it.   Warren R. Co. v. State, 29 N. J. L. 353; Morris & E. R. Co. v. Newark, 10 N. J. Eq. 352; Greenwich v. Easton & A. R. Co. 24 N. J. Eq. 217.

The right to take a franchise of another corporation by a corporation having the right of eminent domain is admitted, but in favor of such right there can be no implication, because it arises from a necessity so absolute that, without it, the grant itself will be defeated.   It must also be a necessity that arises from the very nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience or for the sake of recovery.   Pennsylvania R. Co.'s Appeal, 93 Pa. 150.

The act of assembly does not contemplate two roads; it only contemplates the making of a new road when the old road has been appropriated.   There must be a legal vacation of the old before there can be a new one.   In this case the company does not claim that the old road is vacated.   Danville, H. & W. R. Co. v. Com. 73 Pa. 29.

When it becomes necessary (in order to restore to its usefulness a highway crossed by a railroad) that a bridge should be built over such railroad, the railroad company is bound to build such bridge and continue it in repair so long as the highway exists.   People *ex rel.* Schaghticoke v. Troy & B. R. Co. 37 How. Pr. 427.

A municipality which has, by law, the control and supervision of the public highways within its territorial limits may maintain a suit in equity to prevent any alteration of them or injury to them, which will deprive the public of their safe and convenient use. Jersey City v. Central R. Co. 40 N. J. Eq. 417, 2 Atl. 262; Greenwich v. Easton & A. R. Co. 24 N. J. Eq. 216, 25 N. J. Eq. 565; Philadelphia v. Friday, 6 Phila. 275; Moyamensing Twp. v. Long, 1 Pars. Sel. Eq. Cas. 143; Frankford v. Lennig, 2 Phila. 403; Philadelphia v. Lombard & S. Streets Pass. R. Co. 3 Grant Cas. 403; Philadelphia v. Thirteenth & F. Streets Pass. R. Co. 8 Phila. 648.

It is fitting and proper that a township, as a quasi municipal corporation, having capacity as a body corporate to sue and be sued in its corporate name, should have an equal right with the corporate authorities of a city to proceed by bill in equity and injunction, when the public interests of the citizens submitted to their charge and control are invaded.

The authority of the township could not do what the railroad has done, any more than a municipality could obstruct or confer power to obstruct a public street. St. Vincent Female Orphan Asylum v. Troy, 76 N. Y. 108, 32 Am. Rep. 286; Brooklyn v. New York Ferry Co. 87 N. Y. 205; Mairs v. Manhattan Real Estate Asso. 89 N. Y. 498; Story v. New York Elev. R. Co. 90 N. Y. 123, 43 Am. Rep. 146.

The company was bound to restore the public highway to its former state or to such a state as not unnecessarily to injure its usefulness. Masterson v. New York C. & H. R. R. Co. 84 N. Y. 247, 38 Am. Rep. 510; People v. New York C. & H. R. R. Co. 74 N. Y. 302.

*Guy E. Farquhar,* for appellee.—The act of 1849 vests the discretion to change the site of public roads in the directors of the railroad company, and such discretion cannot be reviewed or interfered with by the court. Danville, H. & W. R. Co. v. Com. 73 Pa. 37; Parke's Appeal, 64 Pa. 137; People v. New York C. & H. R. R. Co. 12 Hun, 195, Affirmed in 74 N. Y. 302; 2 Wood, Railway Law, § 237; South Waverly v. New York, L. & W. R. Co. 7 Sad. Rep. 386.

It must be admitted that all crossings of public roads by railroads at grade are dangerous, and constitute an impediment to the transportation of persons and property along such public roads, but such grade crossings are not illegal. Northern C. R.

Co. v. Com. 90 Pa. 300; Johnston v. Providence & S. R. Co. 10 R. I. 365.

The act of 1849 gives to all railroad corporations, subject to its provisions, the right to take possession of such portions of any public road as come within the line of its track. Danville, H. & W. R. Co. v. Com. 73 Pa. 37.

PER CURIAM:

The carefully considered opinion of the court below relieves us from the necessity of an extended review of either the facts involved or the law governing the subject-matter in controversy. The appeal is dismissed and the decree affirmed, at costs of appellant.